IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA GARCIA, Individually and | § | |
| As Next Friend of Minor J.G., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-3892 |
| | § | |
| NAVASOTA INDEPENDENT | § | |
| SCHOOL DISTRICT, *et al.*, | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a civil rights lawsuit arising from the alleged molestation of minor J.G. by her kindergarten teacher Roberto Andaverde.  Plaintiff is Maria Garcia, J.G.'s mother, individually and on behalf of minor J.G.  Defendants are Navasota ISD, Principal Bill Murray, and Assistant Principal Jennifer Shoalmire.[1]  This case is before the Court on Defendants' Motion for Summary Judgment [Doc. #58] ("Motion"). Plaintiff has filed a Response [Doc. # 84] ("Response"), Defendants have replied [Doc. # 88] ("Reply"), and Plaintiff has filed a Sur-Reply [Doc. #93] ("Sur-Reply"). Plaintiff has also filed a cross Motion for Partial Summary Judgment on 1983 Claims

---

[1]     Plaintiff named other individuals as defendants, but these claims were voluntarily dismissed by Plaintiff.  *See* Order of Dismissal with Prejudice Concerning Defendants Rory Gesch and Jennings Teel [Doc. # 56].

[Doc. # 59] to which Defendants have responded [Doc. # 73], and a cross Motion for Partial Summary Judgment on Title IX Claims [Doc. # 61] to which Defendants have responded [Doc. # 75].[2]  These motions are now ripe for decision.  Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that Defendants' Motion is **granted** and Plaintiff's cross motions are **denied.**

---

[2]  Also pending are (1) Defendants' Objections to Plaintiff's Exhibits in Support of Summary Judgment on 1983 Claims [Doc. # 74], to which Plaintiff has responded [Doc. # 80]; (2) Defendants' Objections to Plaintiff's Exhibits in Support of Summary Judgment on Title IX Claims [Doc. # 76], to which Plaintiff has responded [Doc. # 91]; (3) Defendants' Objections to Evidence in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. # 89]; and (4) Plaintiff's Objections to Evidence in Support of Defendants' Motion for Summary Judgment [Doc. # 92], to which Defendants responded [Doc. # 94].  Defendants' Objections to Plaintiff's Exhibits in Support of Summary Judgment on 1983 Claims [Doc. #74] and on Title IX claims [Doc. # 76] are **denied as moot**.

Also pending before the Court are the following motions to exclude expert testimony: (1) Defendants' Motion to Exclude Expert Testimony [Doc. # 64], pertaining to opinions of Dr. Robert Carruthers, Dr. Walter T. Harrell, Dr. Maribel Hinojosa, and Plaintiff's counsel, to which Plaintiff has responded [Doc. # 69]; (2) Plaintiff's Motion for Leave to File Motion to Exclude Dr. Margo Frasier, to which Defendants have responded in opposition [Doc. # 82] and Plaintiff has replied [Doc. # 85]; and (3) Plaintiff's Motion to Exclude Dr. Margo Frasier [Doc. # 71] to which Defendants have responded [Doc. # 83].  Because Plaintiff's Response [Doc. # 84] relies on the opinions of Dr. Robert Carruthers, to which Defendants object, the Court will address Defendants' Motion to Exclude [Doc. # 64] as it relates to Carruthers.  All other *Daubert* motions are **denied as moot**.

Pursuant to the Court's Order [Doc. # 65], the following documents were filed under seal:  Docs. ## 58, 59, 61, 73, 75, 80, 84, 93.

## I.   BACKGROUND

This is a civil rights lawsuit under 42 U.S.C. § 1983 and Title IX, 20 U.S.C. § 1681 *et seq.* ("Title IX").  Plaintiff Maria Garcia is the mother of minor J.G., who in 2009 was a five year old kindergarten student at the John C. Webb School in the Navasota ISD ("NISD" or the "District").  Plaintiff alleges that J.G. was sexually molested on at least two occasions in October 2009 by her teacher, Roberto Andaverde ("Andaverde").[3]  Plaintiff filed suit against NISD and four current and former district employees:  Principal Bill Murray ("Murray"); Assistant Principal Jennifer Shoalmire ("Shoalmire"), District Superintendent Rory Gesch ("Gesch"), and former District Superintendent Jennings Teel ("Teel").[4]  Significant to Plaintiff's theories of Defendants' liability is a 2005 incident.

*V.Z. Incident.*– Plaintiff claims Defendants mishandled a 2005 complaint by a student against Andaverde.  More specifically, Plaintiff alleges that Andaverde "inappropriately touched" five year old V.Z., that this had been reported to the District through Murray and Shoalmire, and that no disciplinary action was taken against

---

[3]   Andaverde has been indicted by a Grimes County grand jury, charged with two counts of indecency with a child by contact.  It appears the case remains pending.

[4]   Claims against Defendants Gesch and Teel were dismissed with prejudice from this case pursuant to the parties' agreed stipulation of dismissal.  *See* Order of Dismissal with Prejudice Concerning Defendants Rory Gesch and Jennings Teel [Doc. # 56].

Andaverde, who remained employed as a kindergarten teacher at the school.[5]

In the fall of 2005, Andaverde informed Murray that V.Z.'s mother had requested a meeting with Murray regarding an incident with her daughter.[6]  There is no dispute that a meeting was held, but the parties debate who attended.  It is uncontroverted that at least Andaverde, Murray, and Mirna Zuniga-Garcia ("Zuniga-Garcia"),[7] V.Z.'s mother, were present.[8]  No one made any report of V.Z.'s complaint to the school or NISD other than this meeting.[9]

It is not clear exactly what was said at this 2005 meeting.  Murray's recollection, explained in his October 2010 affidavit, is that the meeting was less than

---

[5]     *See* Second Amended Complaint [Doc. # 33], ¶¶ 21-22.

[6]     Affidavit of Bill Murray [Doc. # 58-2] ("Murray Affidavit"), ¶ 6.

[7]     V.Z.'s mother is Mirna Zuniga-Garcia.  Plaintiff in this case is Maria Garcia, J.G.'s mother.  There is no indication of any relationship between Zuniga-Garcia and Maria Garcia.

[8]     Both Murray and Shoalmire state they were present for the meeting.  *See* Murray Affidavit, ¶ 7; Affidavit of Jennifer Shoalmire [Doc. # 58-1] ("Shoalmire Affidavit"), ¶ 5.  Neither Garcia, nor Gregorio Gonzalez ("Gonzalez") recall Shoalmire being present.  *See* Oral/Videotaped Deposition of Zuniga-Garcia June 2, 2010 [Doc # 58-5] ("Zuniga-Garcia Deposition"), at 11-12; Oral/Videotaped Deposition of Gregorio Gonzalez [Doc. # 58-6] ("Gonzalez Deposition"), at 18-20.  Shoalmire indicates Murray asked her to attend the meeting in order to interpret, that is, to serve as a translator.  Shoalmire Affidavit, ¶ 5.

   Neither Murray nor Shoalmire remember Gonzalez, V.Z.'s godfather, attending the meeting, however, Garcia and Gonzalez both indicate that Gonzalez was present.  Murray Affidavit, ¶ 7; Shoalmire Affidavit, ¶ 5; Zuniga-Garcia Deposition [Doc. # 58-5], at 22; Gonzalez Deposition, at 18-20.  Garcia indicates that Gonzalez was present to help interpret.  Zuniga-Garcia Deposition [Doc. # 58-5], at 22.

[9]     Zuniga-Garcia Deposition [Doc. # 58-5], at 62-63.

a half hour and consisted largely of Zuniga-Garcia conversing in Spanish with Andaverde.[10]  Zuniga-Garcia, who apparently speaks only (or primarily) Spanish, claimed in her deposition, taken in June, 2010, that she asked Gregorio Gonzalez ("Gonzalez"), V.Z.'s godfather, to convey in English the following to Murray: (1) that while being bathed and while crying, V.Z. told her mother that Andaverde had inappropriately touched her on her thighs; (2) that this action made V.Z. very uncomfortable, and (3) that Zuniga-Garcia feared for her daughter's safety.[11]  Plaintiff does not establish with any precision where Andaverde reportedly touched V.Z. or what Zuniga-Garcia (through Gonzalez) told Murray at the meeting about what V.Z. told her mother.  Zuniga-Garcia, in her deposition, variously uses the words "thigh" and "leg" to describe where her daughter was touched.  Zuniga-Garcia states that she couldn't understand what English word Gonzalez used when translating to Murray at the meeting.[12]  Gonzalez testified that he didn't know where V.Z. had been touched

---

[10]     Murray Affidavit, ¶ 9.

[11]     Zuniga-Garcia Deposition [Doc. # 58-5], at 22, 91.

[12]     *Id.* at 94.

and did not give Murray any detail about where V.Z. had been touched.[13]   Neither

Shoalmire nor Murray remember the specific subject matter of V.Z.'s complaint.[14]

There is no evidence that any of the participants in the 2005 meeting perceived

or expressed the view that V.Z.'s complaint was sexual in nature.[15]   Plaintiff has

produced no evidence that Shoalmire and Murray were told or understood that

Zuniga-Garcia's issue was that Andaverde was a sexual threat to V.Z.  Additionally,

Zuniga-Garcia, Murray, and Shoalmire each recall that at the 2005 meeting, Murray

offered to transfer V.Z. to another kindergarten class, but that V.Z.'s mother declined

---

[13]     Gonzalez Deposition, at 69, 71-75.

[14]     *See* Shoalmire Affidavit, ¶¶ 5-6 ("I do not recall the specific subject matter of the
complaint, but I know it was not about anything sexual in nature, or even any sort of
serious accusation, which I would certainly remember."); Murray Affidavit, ¶¶ 6, 9 ("My
recollection of the event is limited because it simply was not a remarkable meeting.  Had
it involved any serious allegations, such as any type of sexual misconduct, it would
have been far more memorable.").  To the extent Plaintiff objects to the cited portions of
Shoalmire's affidavit, those objections are **overruled** as the cited material violates no
rule of evidence and Plaintiff provides no authority suggesting otherwise.

[15]     *See* Zuniga-Garcia Deposition [Doc. # 58-5], at 52, 83-84, 94; Gonzalez Deposition, at
71-75, 82-84; Shoalmire Affidavit, ¶ 7; Murray Affidavit, ¶ 10.  Plaintiff objects to
paragraph 10 of Murray's Affidavit as a "self-serving conclusion, which is not readily
controvertible."  This objection is **overruled** as unsupported by Federal Rule of Evidence
or legal doctrine.

the offer.[16]   According to Zuniga-Garcia, she refused because V.Z. indicated she wished to stay in class with her classmates.[17]

After the meeting, neither Shoalmire nor Murray followed up with Zuniga-Garcia, filed any report about Andaverde, nor informed any other school or district officials about the meeting or V.Z.'s complaint.[18]   Murray, however, did send V.Z. to the school counselor, Flora Mason.   Mason stated in her October 2010 affidavit that she recalled that V.Z.'s complaint related to how Andaverde had disciplined V.Z. when she would not stay in her seat.[19]

---

[16]    Zuniga-Garcia Deposition [Doc. # 58-5], at 72; Shoalmire Affidavit, ¶ 6; Murray Affidavit, ¶ 9.

[17]    Zuniga-Garcia Deposition [Doc. # 58-5], at 72.

[18]    Shoalmire Affidavit, ¶ 7; Murray Affidavit, ¶ 10; Zuniga-Garcia Deposition [Doc. # 84-1, Exh. A-2], at 41.   Defendants object to the use of any deposition excerpts attached to Plaintiff's Response [Doc. # 84], specifically Exhibits A-1, A-2, A-3, B-3, B-4.   *See* Defendants' Objections to Evidence in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. #89], ¶ 2.   Although a technical error, Defendants make no substantive argument that these deposition excerpts are not accurate copies of the actual transcripts.   Accordingly, Defendants' objection is **overruled**.

[19]    Affidavit of Flora Mason [Doc. #58-20] ("Mason Affidavit"), ¶ 5 ("I recall the child's complaint had something to do with Mr. Andaverde disciplining her.   During the interview, I asked the child if Mr. Andaverde was mad at her, and she replied that yes, he was mad.   When I asked why, she stated that it was because she wouldn't stay in her seat. The child never gave any indication that Mr. Andaverde had touched her in a sexual manner or otherwise assaulted her.").   Plaintiff objects that V.Z.'s statements to Mason are inadmissible hearsay.   This objection is **overruled.**   These statements are not offered for the truth of the matter asserted, but rather as evidence of lack of notice of sexual abuse.   *See* FED. R. EVID. 801(c).

After the meeting, Zuniga-Garcia waited one to two weeks to tell her husband, V.Z.'s stepfather, about the incident until he had returned from Mexico.[20]   It is uncontroverted that neither Zuniga-Garcia, V.Z.'s stepfather, nor Gonzalez followed up on the complaint about Andaverde.  Neither Zuniga-Garcia, V.Z.'s stepfather, nor Gonzalez filed a formal grievance or reported the incident to the NISD, informally followed up with the school administration seeking any "relief" concerning V.Z., or filed a complaint with the police or Child Protective Services ("CPS").[21]  Additionally, Gonzalez and Juan Garcia, V.Z.'s step father, all indicate that they would have called the police if there had been any sexual touching or abuse of V.Z.[22]  Finally, V.Z. remained in Andaverde's class for approximately one month before going with her mother to Mexico, and a couple of years later, V.Z.'s younger brother was assigned to Andaverde's kindergarten class without problem or objection.[23]

---

[20]   Zuniga-Garcia Deposition [Doc. # 58-5], at 70.

[21]   Zuniga-Garcia Deposition [Doc. # 58-5], at 58-59, 62-63, 86; Gonzalez Deposition, at 88. Zuniga-Garcia testified that in the meeting, Murray never offered her documents with which to file a complaint, never indicated that filing a complaint was an option, and did not inform Zuniga-Garcia that she had any other rights beside complaining to Murray. Zuniga-Garcia Deposition [Doc. # 84-1, Exh. A-2], at 32.  This fact is not material as Zuniga-Garcia had the opportunity to request and seek additional redress had she wanted to.

[22]   *See* Gonzalez Deposition, at 85-86; Oral/Videotaped Deposition of Juan Garcia [Doc. # 58-8], at 14-15.

[23]   Murray Affidavit, ¶ 12.

*J.G. Incident*.– On the evening of October 7, 2009, J.G. told Plaintiff (her mother) that at school that day Andaverde had hugged her and touched her "middle" part.[24]  Plaintiff notified Shoalmire that evening of J.G.'s complaint.[25]  Shoalmire immediately telephoned Murray and informed him of the complaint against Andaverde.[26]

The next day, school officials made sure J.G. was not left alone with Andaverde.[27]  Immediately following the morning assembly, Shoalmire and Cewilla Thomas, Dean of Students, interviewed Andaverde regarding the incident.[28]  Andaverde denied the accusations, and the two administrators sent him back to class while they interviewed J.G. regarding her report.[29]  After the interview, Shoalmire took J.G. to a new kindergarten class to which she had been reassigned.[30]  The same

---

[24]     *See* Oral Deposition of Maria Garcia [Doc. # 58-4] ("Plaintiff Deposition"), at 56-57; Shoalmire Affidavit, ¶ 11.  Shoalmire averred in her affidavit that she understood "middle part" to refer to J.G.'s vaginal area.  Shoalmire Affidavit, ¶ 11.

[25]     *See* Plaintiff Deposition, at 56-57; Shoalmire Affidavit, ¶ 11.

[26]     Shoalmire Affidavit, ¶ 11, Murray Affidavit, ¶ 14.  Shoalmire indicates that she remembers discussing the V.Z. incident with Murray during this call because it was the only other complaint concerning Andaverde with which she had been involved.  *See* Oral Videotaped Deposition of Jennifer Shoalmire [Doc. # 84-1, Exh. A-1], at 30-31.

[27]     *See* Shoalmire Affidavit, ¶ 12; Murray Affidavit, ¶ 15.

[28]     Shoalmire Affidavit, ¶ 12.

[29]     *Id.*

[30]     *Id.*  Murray indicates that he offered Plaintiff the option of placing J.G. in whichever

(continued...)

morning, Murray notified Superintendent Gesch of the complaint.[31]  Gesch asked

Director of Human Resources Denise Morgan to go to the school and investigate.[32]

Morgan determined that further action was needed, and around noon the Navasota

Police Department was notified.[33]  The police and Shoalmire filed reports with CPS.[34]

Plaintiff was also updated at this time.[35]

    That afternoon, the police took over the investigation of the complaint.  The

police requested that the school leave Andaverde in class for the day.[36]  The police

asked the District not to contact or speak to other students or parents until the police

had completed their investigation.[37]  At the end of the day, Murray placed Andaverde

---

[30]     (...continued)
        kindergarten class she believed would make J.G. and herself the most comfortable.
        Murray Affidavit, ¶ 16.

[31]     Shoalmire Affidavit, ¶ 13; Murray Affidavit, ¶ 17; Affidavit of Rory Gesch [Doc. # 58-
        12] ("Gesch Affidavit"), ¶ 8.

[32]     Shoalmire Affidavit, ¶ 13; Murray Affidavit, ¶ 17; Gesch Affidavit, ¶ 8; Affidavit of
        Denise Morgan [Doc. # 58-18] ("Morgan Affidavit"), ¶ 4.

[33]     Shoalmire Affidavit, ¶ 13; Murray Affidavit, ¶ 17; Gesch Affidavit, ¶ 8; Morgan
        Affidavit, ¶ 4.

[34]     Shoalmire Affidavit, ¶ 13; Murray Affidavit, ¶ 17.

[35]     Plaintiff Deposition, at 45.

[36]     Shoalmire, ¶ 13; Murray Affidavit, ¶ 18; Morgan Affidavit, ¶ 6

[37]     Murray Affidavit, ¶ 18; Morgan Affidavit, ¶ 7.

on administrative leave and instructed him to call the police.[38]  The next day, the police and CPS jointly interviewed Andaverde.  Following the interview, the police issued a warrant for Andaverde's arrest and he was jailed that night.  At some point during the investigation, Murray and Shoalmire mentioned to the police the V.Z. incident, as it was the only incident of any other kind involving Andaverde.[39]

On October 13, 2009, after the police told the District they could notify the families of Andaverde's students, Gesch, Morgan, Murray, and Shoalmire, accompanied by Spanish interpreters, went to the homes of each of Andaverde's students, explained the situation to the parents, and gave each parent a copy of a letter explaining the situation in both English and Spanish.[40]  None of the parents reported any other inappropriate conduct by Andaverde and there have been no subsequent complaints.[41]  On October 19, 2009, the Navasota Board of Trustees (the "Board")

---

[38]     Shoalmire Affidavit, ¶ 13; Murray Affidavit, ¶ 18

[39]     Shoalmire Affidavit, ¶ 16; *see also* Morgan Affidavit, ¶ 5.

[40]     Shoalmire Affidavit, ¶ 15; Murray Affidavit, ¶ 19; Gesch Affidavit, ¶ 10; Morgan Affidavit, ¶ 7; *see also* October 12, 2009, Letter from Rory S. Gesch [Doc. # 58-16].

[41]     Shoalmire Affidavit, ¶ 15; Murray Affidavit, ¶ 19; Gesch Affidavit, ¶ 10; Morgan Affidavit, ¶ 7.

voted to propose the termination of Andaverde.[42]  Andaverde was given notice of this proposal and on December 3, 2009, Andaverde tendered his resignation.[43]

On December 3, 2009, Plaintiff filed suit against NISD and current and former NISD employees under Section 1983 and Title IX.  Plaintiff argues that the District and its employees are liable for failing to investigate, failing to report, and attempting to "cover up" the V.Z. complaint.  Plaintiff alleges that this allowed Andaverde to remain in the classroom, where he was ultimately able to molest her daughter, J.G.  Defendants and Plaintiff each have filed cross-Motions for Summary Judgment [Docs. ## 58, 59, 61].  These Motions are now ripe for decision.

## II.  <u>STANDARD FOR SUMMARY JUDGMENT</u>

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  "The Court shall grant

---

[42]     Gesch Affidavit, ¶ 11.

[43]     Gesch Affidavit, ¶¶ 9, 11.

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp.*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003) (internal citation omitted). The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).

The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994). Likewise, "conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010); *see also Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). "A party cannot defeat summary judgment with 'only

a scintilla of evidence.'" *Delta & Pine Land Co.*, 530 F.3d at 399 (quoting *Little*, 37 F.3d at 1075).

Rather, a party must support any assertion that a fact cannot be or is genuinely disputed by "(a) citing to particular parts of materials in the record . . . ; or (b) showing that the materials cited do not establish the absence or present of a genuine dispute, or that an adverse party cannot produce admissible evidence to support that fact." FED. R. CIV. P. 56(c)(1). Affidavits cannot defeat summary judgment unless they contain competent and otherwise admissible evidence. FED. R. CIV. P. 56(c)(4). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000).

Further, "the court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Id.*

In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Rather, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may, *inter alia,* "(2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion  and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." FED. R. CIV. P. 56(e).

Finally, when evaluating cross-motions for summary judgment, the "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004) (citing 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 1998) ("WRIGHT")).  "But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment."  WRIGHT, § 2720.

## III.   DISCUSSION

### A.   Admissibility of Dr. Carruthers's Expert Report

Defendants seek to exclude the expert testimony of Dr. Robert Carruthers ("Carruthers"), Dr. Walter Harrell, Dr. Hinojosa, and Plaintiff's counsel.[44] Plaintiff's Response to Defendants' Summary Judgment Motion relies heavily on Carruthers's opinions. The Court accordingly addresses the admissibility of those opinions here.[45] Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court concludes that the pertinent testimony of Dr. Carruthers is inadmissible and Defendants' Motion is **granted in part.**

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify . . . in the form of an opinion or otherwise." FED. R. EVID. 702; *see generally Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). "A party seeking to introduce expert testimony must show (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (internal quotation marks and citation omitted); *see also* FED. R. EVID. 702.

---

[44]    Defendants' Motion to Exclude Expert Testimony [Doc. # 64]. Plaintiff has responded to this Motion. *See* Plaintiff's Response to Defendants' Motion to Exclude Expert Testimony [Doc. # 69].

[45]    Plaintiff does not rely on the testimony of Dr. Walter Harrell, Dr. Hinojosa, or Plaintiff's counsel in her summary judgment briefing. As such, the Court need not address this Motion as it relates to those witnesses here.

The trial judge first must determine that the witness is qualified as an expert in the relevant field. To do so, the Court must assess "whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *See Kuhmo*, 526 U.S. at 156. "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Huss*, 571 F.3d at 452 ("Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.").

Next, the Court must determine if the expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589; *accord Chan v. Coggins*, 294 Fed. App'x 934, 937 (5th Cir. 2008); *see generally* FED. R. EVID. 702. Under the *Daubert* rubric, the district court is to make a "'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts at issue.'" *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 617 (5th Cir. 1999) (quoting *Daubert*, 509 U.S. at 592-93). This so-called "gate-keeping" obligation applies to all types of expert testimony, not just "scientific" testimony. *Kumho*, 526 U.S. at 147; *Skidmore*, 188 F.3d at 617-618.

Although *Daubert* lists and *Kumho* adopts several factors[46] that may be considered in assessing the reliability of expert testimony, the Supreme Court has emphasized that the analysis is a flexible one. *See Daubert*, 509 U.S. at 594; *Kumho*, 526 U.S. at 149-50.  Whether *Daubert*'s suggested indicia of reliability apply to any given testimony depends on the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony, and is a fact-specific inquiry. *Kumho*, 526 U.S. at 147-151; *Skidmore*, 188 F.3d at 618; *Chan*, 294 Fed. App'x at 937.  The district court's basic responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 151.

The burden is on the party offering the expert testimony to establish that it is admissible. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).  Where the basis for an expert's opinion is clearly unreliable, the district court

---

46      Four factors to consider in determining the reliability of proffered scientific evidence are (1) whether the theory or procedure has been subjected to testing; (2) whether it has been subjected to peer review and publication; (3) the rate of error and the existence of standards controlling the theory or procedure; and (4) whether it has attained general acceptance. *Pipitone v. Biomatrix*, 288 F.3d 239, 244 (5th Cir. 2002); *accord Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 379 (5th Cir. 2010). A trial judge may use these factors to evaluate the reliability of experienced-based expert testimony. *Kumho*, 526 U.S. at 151-52.

may disregard that opinion in deciding whether a party has created a genuine issue of material fact. *See Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

Reliability and validity do not require certainty, but must be demonstrated by evidence that the knowledge is more than speculation. *Daubert*, 509 U.S. at 590. An expert's self-proclaimed accuracy is insufficient. *See Kumho*, 526 U.S. at 157. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *accord Chan*, 294 Fed. App'x at 938-39.

In her Response to Defendant's Motion for Summary Judgment [Doc. # 84], Plaintiff relies on Carruthers's opinions as stated in his report for the following propositions: (1) that Jennifer Shoalmire, as Director of the NISD Bilingual and ESL program, had supervisory authority over Andaverde in 2005;[47] (2) that NISD "had actual notice of the abuse on the basis of sex based on a prior parental complaint of 'inappropriate touching' of V.Z.'s thighs in December, 2005;"[48] and (3) that NISD "responded with deliberate indifference to J.G. by attempting to cover up the prior similar incident [*i.e.* Mirna Zuniga-Garcia's prior complaint in 2005 of 'inappropriate

---

[47]    Response [Doc. # 84], at 10 (citing Dr. Robert Carruthers's Expert Report [Doc. # 84-3] ("Carruthers Report"), at 9).

[48]    *Id.* at 11 (citing Carruthers Report, at 9).

touching' concerning Roberto Andaverde and student (V.Z.)] and failing to take action that was obviously necessary to stop the abuse and such failure caused J.G. to be sexually abused."[49]  He bases these opinions simply on having read the pleadings, depositions, and written discovery in this case; various NISD policies and employee handbooks; and three Fifth Circuit cases, as well as his over 30 years combined experience as a superintendent, assistant superintendent, principal and teacher.  He provides no reasoning or analysis.

Defendants argue that Carruthers's opinions should be excluded because they are conclusory and unreliable, and because they render legal opinions which usurp the Court's role in explaining the law to a jury.[50]  In response, Plaintiff characterizes these arguments as attacking Carruthers's qualifications.  Plaintiff argues that Carruthers relies on his education and his thirty years experience in the education field and attaches his curriculum vitae as support.[51]

The Court finds that Carruthers's opinions on the pertinent issues are inadmissible.  Carruthers's report consists largely of conclusions as to the ultimate issues in this case with some citations to evidence reviewed.  Although Federal Rule

---

[49]     *Id.* at 13 (citing Carruthers Report, at 10).

[50]     Defendants' Motion to Exclude Expert Testimony [Doc. #64], at 2-7.

[51]     Plaintiff's Response to Defendants' Motion to Exclude Expert Testimony [Doc. # 69], at 2.

of Evidence 704 does not prohibit testimony embracing ultimate issues, Rule 704 "does not open the door to all opinions." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). "[Q]uestions which would merely allow the witness to tell the jury what result to reach are not permitted." *Id.* (citing *United States v. Fogg*, 652 F.2d 551, 557 (5th Cir. 1981)), and *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977)); *see also* FED. R. EVID. 704 Advisory Committee's Note (2010) ("The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. . . . [Rules 701, 702, and 403] afford ample assurances against the admission of opinions which would merely tell the jury what result to reach . . . . They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria."). Further, the Fifth Circuit has repeatedly held that Rule 704 does not allow experts to render conclusions of law. *See Snap-Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996) (citing cases). If an expert's statement offers no more than what a lawyer could offer in argument, it should be excluded. *See In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986).

Carruthers cites to the factual record in this case for the conclusions that *inter alia* NISD had actual notice of prior abuse by Andaverde based on V.Z.'s complaint and that NISD responded with indifference by failing to take necessary action to stop further abuse. These opinions wholly invade both the province of the Court in

explaining the legal standards to be applied and the province of the jury in interpreting whether the facts of this case meet those standards.  Tellingly, much of Plaintiff's Response [Doc. # 84] appears to be copied verbatim from Carruthers's report without citation.

Equally significantly, Carruthers provides no analysis showing a basis for his opinions;  he makes no effort to establish he has applied any reliable methodology or specific recognized educational or other bases in reaching his conclusions.  Although Carruthers has many years experience as an educator and school official, he provides the Court with no rationale for how he concludes, in a way superior to a layman, that Defendants had notice and that their actions amounted to deliberate indifference.  As such, his report consists of unreliable, *ipse dixit* conclusions, which are inadmissible in evidence and cannot be used to create a genuine issue of material fact to defeat summary judgment.

**B.**     **Liability of Defendant NISD**

    **1.**     **Section 1983**

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). There is no genuine issue that these two factors have been met in this case. Plaintiff claims that J.G.'s constitutional rights were violated when she was molested by Andaverde, her kindergarten teacher. The Fifth Circuit has held that school children have a liberty interest in their bodily integrity protected by the Due Process Clause of the Fourteenth Amendment, and that physical sexual abuse by a school employee violates this right. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994). Further, there appears no dispute that Andaverde's alleged wrongful conduct occurred on school property during the school day, and he used his position as a kindergarten teacher to molest J.G. while hugging her. Thus, as a matter of law, he was acting under color of state law for the purposes of the pending summary judgment motions. *See Taylor*, 15 F.3d at 452 n.4 ("[I]f a 'real nexus' exists between the activity out of which the violation occurs and the teacher's duties and obligations as a teacher, then

the teacher's conduct is taken under color of state law." (citing *D.T. by M.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1188 (10th Cir. 1990))).

The pivotal issue in this case on Plaintiff's Section 1983 claim is whether NISD is liable for Andaverde's conduct.  A local government entity is a "person" subject to suit under Section 1983.  *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (citing *Monell v. New York City Dep't of Soc. Servs.*, 435 U.S. 658, 690 (1978)).  However, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Pitrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  Accordingly, "municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom."  *Id.* (citing *Monell*, 436 U.S. at 694).  Plaintiff does not satisfy these three elements.

The Fifth Circuit has held that under Texas law, a school district's board of trustees, not the board in combination with any subordinate school district officials is the "official policymaker" for purposes of Section 1983 liability.  *See Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247-48 (5th Cir. 2003); *accord Robinson v. Owens*, No. 4:09-CV-2118, 2010 WL 5099596, at *3 (S.D. Tex. Nov. 22, 2010)

(citing *Jackson v. Houston Indep. Sch. Dist.*, 189 F.3d 467, 1999 WL 511478, at *6 (5th Cir. June 29, 1999)); *see also* TEX. EDUC. CODE ANN. § 11.151 (2006).  Principals and superintendents do not have "the policymaking authority required to sustain liability under § 1983" even if they have been delegated decision-making authority under the Texas Education Code.  *Foster v. McLeod Indep. Sch. Dist.*, No. 5:08CV71, 2009 WL 175154, at *2 (E.D. Tex. Jan. 23, 2009) (citing *Rivera*, 349 F.3d at 248).[52] A plaintiff generally cannot impute the actions of principals and superintendents to a school district for purposes of Section 1983 liability.  *Id.* (citing *Brittany B. v. Martinez*, 494 F. Supp. 2d 534, 541 (W.D. Tex. 2007)); *see also Rivera*, 349 F.3d at 247-48; *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995).

For purposes of the Section 1983 claim against the District, "official policy" is:

> 1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.  A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated

---

[52]     Plaintiff alleges in her Second Amended Complaint [Doc. # 33] (but does not brief or supply any evidence) that "the NISD School Board's designation of Principal Murray amounted to a delegation of policy making authority."  Second Amended Complaint [Doc. # 33], ¶ 29.  This allegation amounts to the theory that the Board impliedly delegated authority to school principal Murray.  The Fifth Circuit has held that without evidence, a plaintiff cannot prevail on an argument that policy-making authority has been impliedly delegated to a school principal.  *See Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304-05 (5th Cir. 1995).  Plaintiff has provided no evidence suggesting that the NISD Board ever delegated any policy-making authority to Murray.

> policy, is so common and well settled as to constitute a custom that fairly
> represents municipal policy. Actual or constructive knowledge of such
> custom must be attributable to the governing body of the municipality or
> to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984); *accord Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003) (citing *Bennet v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)); *Gates v. Tex. Dept. of Protective & Regulatory Servs.*, 537 F.3d 404, 436 (5th Cir. 2008); *Brittany B.*, 494 F. Supp. 2d at 541.

To prevail on her Section 1983 claim against NISD, Plaintiff must also show that her constitutional rights were violated through execution of an official policy or custom properly attributable to the District's Board of Trustees. *Brittany B.*, 494 F. Supp. 2d at 543 (citing *Eugene*, 65 F.3d at 1304). Further, "it is not enough for a [Section] 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *accord Brittany B.*, 494 F. Supp. 2d at 543 (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 216 (5th Cir. 1998)).

In this case, Plaintiff has not identified any District "policy statement" to ignore, condone, or cover up sexual abuse of students "officially promulgated."

Instead of pointing to an enunciated Board policy that was the "moving force" behind the alleged constitutional violation, Plaintiff asserts that NISD is liable under Section 1983 because Murray and Shoalmire failed to investigate and report the V.Z. incident and failed to remove Andaverde from the classroom after that incident.  Plaintiff argues that, by these omissions, Defendants Murray and Shoalmire acted with deliberate indifference toward the constitutional rights of other students,[53] and that this is evidence that the District had a custom of deliberately ignoring or attempting to cover up acts of physical and sexual abuse between NISD employees and students.

Plaintiff has failed to raise a genuine issue of material fact as to the District's liability under Section 1983 in this case.  As noted above, under Texas law, a school district's board of trustees, not a subordinate school district official, is the "official policymaker" for purposes of Section 1983 liability.  *See Rivera*, 349 F.3d 244, 247-48 (5th Cir. 2003); *accord Robinson*, 2010 WL 5099596, at *3 (citing *Jackson*, 189 F.3d 467, 1999 WL 511478, at *6); *Foster*, 2009 WL 175154 (citing *Rivera*, 349 F.3d at 248); *Brittany B.*, 494 F. Supp. 2d at 541.  A plaintiff cannot impute the actions of principals and subordinates to the school district for purposes of Section 1983 liability.  *Brittany B.*, 494 F. Supp. 2d at 541.  Plaintiff has presented no evidence that

---

[53]     Plaintiff argues that the District can be liable by reference to the standard set out by the Fifth Circuit in *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994).  The Fifth Circuit in *Taylor*, however, did not address the scope of liability for a school district under Section 1983.

the Board ever had any knowledge of V.Z.'s complaint against Andaverde.   In

contrast, all evidence of record establishes the contrary; all attendees of the 2005

meeting regarding V.Z. agree they never reported the matter to any District officials

or members of the Board.[54]   Accordingly, NISD never got notice of any complaint

about Andaverde prior to J.G.'s 2009 complaint and cannot be held liable under

Section 1983 for J.G.'s injuries or claims under Section 1983.[55]

### 2.    Title IX

Under Title IX, a student who has been sexually abused by a teacher may

recover from the school district if the "school district actually knew that there was a

substantial risk that sexual abuse would occur."  *Rosa H. v. San Elizario Indep. Sch.*

*Dist.*, 106 F.3d 648, 652-53 (5th Cir. 1997).  To recover, a plaintiff must prove that

"(1) a school district employee with supervisory power over the offending teacher

(2) had actual notice of the harassment and (3) responded with deliberate

---

[54]    Shoalmire Affidavit, ¶ 7; Murray Affidavit, ¶ 12; Zuniga-Garcia Deposition [Doc. # 84-1, Exh. A-2], at 41; Zuniga-Garcia Deposition [Doc. # 58-5], at 58-59, 62-63, 86; Gonzalez Deposition, at 88.

[55]    Plaintiff makes a few other arguments in her briefs about her Section 1983 claim, which the Court carefully has considered.  They are unpersuasive and rely either on immaterial factual discrepancies or misconstructions of depositions, or are wholly unsupported by evidence or legal doctrine.  None of Plaintiff's remaining arguments on her Section 1983 claim affect the Court's rulings.

indifference." *King v. Conroe Indep. Sch. Dist.*, 289 F. App'x 1, 4 n.3 (5th Cir. 2007); *see Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274, 290 (1998).

It is undisputed that, as principal of the schools at which Andaverde taught, Defendant Murray had supervisory power over Andaverde.[56]  Plaintiff argues unconvincingly that Shoalmire, as Director of Bilingual Programs in 2005, also had supervisory power over Andaverde, a bilingual teacher, for Title IX purposes.[57]  This argument is unsupported by any evidence.  The Supreme Court has held that for Title IX purposes, a supervisory official must "at a minimum ha[ve] authority to address the alleged discrimination and to institute corrective measures on the . . . [district's] behalf." *Gebser*, 524 U.S. at 290.  The Fifth Circuit has noted that this test "omits the bulk of employees, such as fellow teachers, coaches and janitors." *King*, 289 F. App'x at 3-4 & n.3 (quotation omitted).  Further, "[n]otice of harassment to employees who have no authority beyond reporting the misconduct to other employees is insufficient to expose a [school district] to Title IX liability." *Alegria v. Texas*, No. G-06-0212, 2007 WL 3256586, at *4 (S.D.Tex. Nov. 2, 2007) (Lake, J.) (citing *Rosa H.*, 106 F.3d at 661).

---

[56]     *See* Response [Doc. # 84], at 8-10 (arguing that Murray had supervisory power over Andaverde in 2005 and 2009); Reply [Doc. # 88], at 3 ("Both parties agree that Principal Murray . . . was a supervisory official for purposes of a Title IX inquiry.").

[57]     *See* Response [Doc.# 84], at 10.

Defendants have provided strong evidence establishing that Shoalmire did not have supervisory authority over Andaverde in 2005.  Shoalmire, Murray, and Gesch all testified that in 2005, Shoalmire was the part-time director of NISD's bilingual program, was responsible for managing the program's curriculum, but did not have any supervisory authority over Andaverde.[58]  Plaintiff relies solely on her expert Dr. Robert Carruthers's virtually unsupported opinion that Shoalmire had supervisory authority over Andaverde in 2005, an opinion the Court has held inadmissible because it lacks sufficient indicia of reliability.[59]  Plaintiff thus presents no admissible evidence to contradict the factual record presented by Defendants, and has not met her burden to defeat Defendants' Motion for Summary Judgment regarding Shoalmire's duties and role over Andaverde in 2005 for Title IX purposes.[60]

---

[58]    *See* Shoalmire Affidavit, ¶ 8; Murray Affidavit, ¶ 8 ("I was Mr. Andaverde's only supervisor since he started at John C. Webb in 2005."); Gesch Affidavit, ¶ 5.  Shoalmire avers in her affidavit that as part-time Director of the NISD Bilingual and ESL program, she did not evaluate faculty or make personnel recommendations.  She further avers that evaluations, discipline and conduct issues would be addressed directly between the faculty member and the campus principal (here, Murray).  Shoalmire Affidavit, ¶ 8.

[59]    His opinion is merely conclusory, based solely on Shoalmire's title as Director of Bilingual Programs.  *See* Carruthers Report, at 9.  In any event, as a mere *ipse dixit* statement, this opinion is entitled to no weight.  *See Chambers v. Exxon Corp.*, 247 F.3d 240, 240 (5th Cir. 2001) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997))).

[60]    Assuming *arguendo* that Shoalmire had supervisory authority over Andaverde in 2005, summary judgment with respect to her role would still be appropriate under Title IX in favor of NISD for the reasons explained hereafter regarding Murray. Plaintiff also has made no showing on other key Title IX elements, namely, that Shoalmire had actual knowledge of Andaverde's sexual misconduct, that she knew of a substantial risk of Andaverde's sexual misconduct in 2005, or that she responded to the V.Z. incident with

(continued...)

To recover under Title IX, Plaintiff alternatively must prove that Murray had "had actual notice of the harassment" and "responded with deliberate indifference." *See King*, 289 F. App'x at 4 n.3.  To prove actual notice under Title IX, an official must be aware of facts from which he could draw the inference, and he must actually draw the inference, that a substantial risk of serious harm exists.  *See Rosa H.*, 106 F.3d at 658.  A plaintiff "need not show that a particular teacher would abuse a particular student," *id.* at 659, but must "establish[] that the school district . . . knew that [the offending teacher] posed a substantial risk of harassing students in general." *Id.*

A plaintiff cannot recover under Title IX where she "fails to demonstrate that the school district actually knew that the students or a particular student faced a substantial threat of sexual harassment." *Id.*  Accordingly, Title IX liability may not be imposed on a school district where an official with the requisite authority either (1) "did not know of the underlying facts indicating a sufficiently substantial danger;" or (2) "knew the underlying facts, but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."  *Id.* at 659 (internal quotations omitted).[61]

---

[60]      (...continued)
deliberate indifference.

[61]      Plaintiff cites *Tesoriero v. Syosset Central Sch. Dist.*, 382 F. Supp. 2d 387 (E.D.N.Y.
(continued...)

Plaintiff argues that Zuniga-Garcia and Gonzalez's report to Murray and Shoalmire of V.Z.'s complaint to her mother while bathing of being "inappropriately touched" demonstrates that Murray had actual notice that Andaverde had abused a student.  This argument is unsupported by the record.  Defendants have adduced the following uncontradicted evidence:  (1) none of the participants in the 2005 meeting expressed the view or testified he or she perceived that V.Z.'s complaint was sexual in nature;[62] (2) Zuniga-Garcia, Murray, and Shoalmire each recall that at the 2005 meeting, Murray offered to transfer V.Z. to another kindergarten class but V.Z.'s mother declined the offer;[63] (3) V.Z. remained in Andaverde's class for approximately one month before going with her mother to Mexico;[64] and (4) at some later time,

---

[61]       (...continued)
2005), and *Hart v. Paint Valley Local Sch. Dist.*, No. C2-01-004, 2002 WL 31951264 (S.D. Ohio 2002), for the proposition that "actual knowledge means knowledge of facts indicating that a teacher possesses the potential to abuse a student."  *See* Response [Doc. # 84], at 11.  The Court has considered these cases and finds them factually distinguishable and legally unpersuasive.  These decisions also are not binding authority and do not apply standards applicable in this Circuit.  The Court applies the Fifth Circuit standard as articulated above.

[62]       Zuniga-Garcia Deposition [Doc. # 58-5], at 52, 83-84, 94; Gonzalez Deposition, at 71-75, 82-84; Shoalmire Affidavit, ¶ 7; Murray Affidavit, ¶ 10.  Both Zuniga-Garcia and Juan Garcia, V.Z.'s step-father, testified that Zuniga-Garcia did not go to Murray to report a sexual assault.  *See* Oral/Videotaped Deposition of Mirna Garcia [Doc. # 88-7] ("Zuniga-Garcia Deposition"), at 84; Oral/Videotaped Deposition of Juan Garcia [Doc. # 88-8], at 11-12, 16.

[63]       Zuniga-Garcia Deposition [Doc. #58-5], at 72; Shoalmire Affidavit, ¶ 6; Murray Affidavit, ¶ 9.

[64]       Murray Affidavit, ¶ 12; Zuniga-Garcia Deposition [Doc. # 58-5], at 60-61.  There is no (continued...)

V.Z.'s younger brother was assigned to Andaverde's kindergarten class without problem or objection.[65]  Although Plaintiff argues that one of Zuniga-Garcia's reasons for reporting the incident to Murray was because she believed V.Z. and other children were in danger,[66] there is no evidence that this fear was relayed to Murray in the meeting.  This evidence suggests plainly that Murray did not have any notice that Andaverde sexually abused V.Z.

Furthermore, Plaintiff does not establish with any precision where Andaverde reportedly touched V.Z. and, significantly, what Zuniga-Garcia communicated to Murray at the 2005 meeting about V.Z.'s complaint.  Gonzalez, Zuniga-Garcia's interpreter and V.Z.'s godfather, testified that he did not know and did not tell Murray where V.Z. had been touched.[67]  Accordingly, the summary judgment evidence demonstrates only that Murray knew that V.Z.'s mother had complained that Andaverde had "inappropriately touched" V.Z.  There is no evidence that anyone ever suggested to Murray that Andaverde's touching of V.Z. was sexual in nature.  Indeed, the school counselor who met with V.Z. shortly after Zuniga-Garcia's report explained

---

[64]      (...continued)
          evidence concerning why Zuniga-Garcia and V.Z. went to Mexico.

[65]      Murray Affidavit, ¶ 12.

[66]      *See* Zuniga-Garcia Deposition [Doc. # 84-1, Exh. A-2], at 37.

[67]      Gonzalez Deposition, at 69, 71-75.

that V.Z. never gave any indication that Andaverde had touched her in a sexual manner.  Rather, the uncontradicted evidence is that V.Z. stated to the counselor that Andaverde had been angry with her and had disciplined her because she (V.Z.) would not stay in her seat.[68]  The facts presented did not give Murray notice that Andaverde posed a sufficiently substantial danger that he would sexually abuse other students, let alone give Murray grounds to punish Andaverde by removing him from the classroom and/or terminating his employment, the sanctions Plaintiff now suggests were warranted as a result of the V.Z. incident.[69]

Plaintiff also fails to meet the alternative prong under *Rosa*.[70]  Plaintiff puts forth no evidence suggesting that Murray ever actually drew an inference that Andaverde posed a risk to V.Z. or other students.  For the purposes of NISD's Title IX liability, Murray and the District accordingly have not been shown to have known

---

[68]     *See* Mason Affidavit, ¶ 5.

[69]     Plaintiff cites the opinion of her expert, Carruthers, for the proposition that Defendants had "actual notice of the abuse on the basis of sex based on a prior parental complaint of 'inappropriate touching' of V.Z.'s things."  Plaintiff's Response [Doc. # 84], at 11.  As noted, the Court has held that this conclusory opinion is inadmissible.  It does not create a genuine issue of material fact.

[70]     *See Rosa H*, 106 F.3d at 658 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))).

or had notice of a prior incident or of a substantial risk that sexual abuse by Andaverde would occur.[71]

Plaintiff also has not established that Murray acted with deliberate indifference, the third prong required for a Title IX claim.  *See King*, 289 F. App'x at 4 n.3; *Rosa H.*, 106 F.3d at 660; *see also Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) (defining Title IX deliberate indifference standard for student-to-student harassment as when the "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances").  The Fifth Circuit has consistently held that "[t]he deliberate indifference standard is a high one," and "[a]ctions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."  *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

---

[71]   Plaintiff additionally argues that Defendants had notice for Title IX purposes because Shoalmire discussed the V.Z. incident with Murray after reporting J.G.'s complaint and because Shoalmire told Navasota Police Investigator Klawinsky about the V.Z. incident. This argument is unpersuasive.  Shoalmire's thoroughness in noting to the officer the only other complaint against Andaverde does not prove that Shoalmire or, more pertinent, Murray perceived that V.Z.'s complaint was sexual in nature.

Plaintiff's arguments seem to rest wholly on her insistence that a report of "inappropriate touching" on the thigh is independently sufficient to indicate sexual touching and/or sexual abuse.  It is not in the circumstances presented here.  Indeed, both V.Z. and Zuniga-Garcia specifically indicated that the touching was not sexual in nature.  *See* Mason Affidavit, ¶ 5; Zuniga-Garcia Deposition [Doc. # 58-5], at 52, 83-84, 94; Zuniga-Garcia Deposition [Doc. # 88-7], at 84.

Murray did not act with deliberate indifference.  While he did not report the V.Z. incident to any District officials, CPS, or the police, he did offer to transfer V.Z. to another class, but her mother declined.  He arranged for V.Z. to speak with a school counselor, and when she did so, she never asserted facts suggesting sexual conduct by Andaverde.  V.Z.'s mother and advocates never reported any conduct by Andaverde that they thought was sexual in nature.  The evidence of record is uncontradicted that Murray and Shoalmire each believed that the V.Z. situation had been resolved to everyone's satisfaction.[72]  Under these circumstances, Murray's actions do not amount to deliberate indifference.

Plaintiff makes a few additional arguments in her briefs in support of deliberate indifference by Murray and Shoalmire.  Plaintiff cites *Vance v. Spencer Cnty Public Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000), for the proposition that "when a school district merely conducts an investigation but then essentially does nothing, it acts with deliberate indifference."[73]  The Court has considered this case and finds it factually and materially distinguishable.  Vance concerned repeated acts of peer sexual harassment that were expressly reported to the school principal.  The principal's response was merely to talk with the offending students and the harassment continued.

---

[72]     Shoalmire Affidavit, ¶ 6; Murray Affidavit, ¶ 9.

[73]     Response [Doc. # 84], at 13.

The Sixth Circuit applied the Supreme Court's *Davis* standard, 526 U.S. at 648, and concluded that the principal's "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances."  In stark contrast, the V.Z. complaint was not a clear report of sexual abuse or harassment; the Court has already held that Defendants did not have notice of any sexual abuse of V.Z. by Andaverde, if any occurred.  Additionally, Murray and Shoalmire did *not* "do nothing" as in *Vance*.  Murray offered to transfer V.Z. to another class and her mother declined, and V.Z. was sent to the school counselor.  In light of the ambiguous nature of V.Z.'s complaint, these steps were a rational response at the time and were not deliberately indifferent.

Plaintiff also offers the conclusion of CPS Special Investigator Aleida Jarvis that V.Z.'s complaint should have been reported to and investigated by CPS.[74] Investigator Jarvis bases this opinion solely on having heard from Navasota Police Investigator Amanda Klawinsky that Shoalmire told Klawinsky that allegations of inappropriate touching had been made against Andaverde in 2005.  There is no evidence Jarvis had access to any details surrounding the V.Z. incident, V.Z.'s comments to the school counselor, or the school's response.  Jarvis's testimony also is hearsay and inadmissible.  Her conclusion, even if admissible, lacks detailed

---

[74]    *See* Oral/Videotaped Deposition of Aleida Jarvis, [Doc. # 84-1, Exh. A-3] ("Jarvis Deposition"), at 75-76.

reasoning and is insufficient to support a verdict in Plaintiff's favor under Title IX. *See Cormier v. Penzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992); *accord Hatch v. Wal-Mart Stores, Inc.*, 200 Fed. App'x 310, 312 (5th Cir. 2006) (citing *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)).

At best, in 2005 Murray and Shoalmire might be accused of possible negligence in not investigating in more depth whether there was sexual misconduct by Andaverde.  Negligence, however, is insufficient to create Title IX liability of the District here. *See Rosa H.*, 106 F.3d at 661 (holding that "[b]y instructing the jury that the school district could be liable for the negligence of its employees [in failing to prevent sexual abuse of student], the district court misstated Title IX law.").

The Court concludes that there is no genuine fact issue that a supervisor of Andaverde had actual knowledge that he posed a substantial risk of abusing students and responded with deliberate indifference.  Accordingly, NISD is not liable under Title IX.

### C.    Individual Liability of Defendants Murray & Shoalmire

Public officials performing discretionary functions are entitled to qualified immunity in civil actions for damages, provided their conduct does not "'violate clearly established federal statutory or constitutional rights of which a reasonable person would have known.'"  *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (internal citations omitted).

"A qualified immunity defense alters the usual summary judgment burden of proof."  *Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)).  "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."  *Id.*  Although all inferences are drawn in her favor, a plaintiff "bears the burden of negating qualified immunity."  *Id.*

The Court conducts a two part inquiry to assess the defense of qualified immunity.  First, Plaintiff must allege that Defendants violated a clearly established constitutional right.  *See Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004); *accord Brown*, 623 F.3d at 253.  "To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  *Brown*, 623 F.3d at 253.

Second, the Court considers whether Defendants' actions were "objectively reasonable under the circumstances." *Collins*, 382 F.3d at 537 (citing *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 490 (5th Cir. 2001), and *Harlow*, 457 U.S. at 819). "Whether an official's conduct was objectively reasonable is a question of law for the court not a matter of fact for the jury." *Brown*, 623 F.3d at 253. To defeat the qualified immunity defense, a plaintiff must "allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.* (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)).

"An officer's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)). Further, "[t]he qualified immunity standard 'gives ample room for mistaken judgments' . . . by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Depree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malle v. Briggs*, 475 U.S. 335, 341 (1986)).

Plaintiff asserts that Murray and Shoalmire should be liable under Section 1983[75] because Murray and Shoalmire's mishandling of the 2005 V.Z. complaint allowed Andaverde to remain a kindergarten teacher and subsequently molest J.G.

---

[75]     In the Response [Doc. # 84], Plaintiff specifically states that she did not allege Title IX liability against Murray and Shoalmire individually. Any such claim is deemed abandoned.

Plaintiff has alleged and presented proof of a violation of a clearly established constitutional right.  The Fifth Circuit has held that school children have a liberty interest in their bodily integrity protected by the Due Process Clause of the Fourteenth Amendment, and that physical sexual abuse by a school employee violates this right. *See Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994).  Therefore, the Court must determine whether Plaintiff has raised a genuine fact issue whether Defendants Shoalmire and/or Murray's "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins,* 382 F.3d at 537.  According to the Fifth Circuit,

> A supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that:
>
> (1)  the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing a student;
>
> (2)  the defendant demonstrated deliberate indifference toward the constitutional rights of the students by failing to take action that was obviously necessary to prevent or stop the abuse; and
>
> (3)  such failure caused a constitutional injury to the student.

*Taylor*, 15 F.3d at 454.  Plaintiff has not demonstrated a fact issue with respect to either of the first two elements of the *Taylor* test.  The V.Z. complaint, an allegation of a single instance of "inappropriate touching" with *no* contemporaneous alleged

sexual component, is insufficient to constitute "facts or a pattern of inappropriate sexual behavior" by Andaverde.  The V.Z. incident does not point plainly toward the conclusion that Andaverde was sexually abusing V.Z.; indeed, no one at the 2005 meeting ever indicated that V.Z.'s complaint was sexual in nature.[76]   The reasonableness of Murray and Shoalmire's response in 2005 is reinforced by the fact that Zuniga-Garcia, V.Z.'s mother, declined Murray's offer to have her child removed from Andaverde's classroom.  Murray followed up by having V.Z. meet with Mason, the school counselor.  Moreover, the child's explanation to Mason reinforces the conclusion that Murray and Shoalmire's conduct was not unreasonable.  The V.Z. complaint was vague, but was not ignored by Murray and Shoalmire.

As to the second *Taylor* element, as explained above, Plaintiff has not shown a genuine fact issue that Murray or Shoalmire were deliberately indifferent to V.Z., J.G., or any other student's constitutional rights by "failing to take action that was obviously necessary to prevent or stop [Andaverde's] abuse." *Taylor*, 15 F.3d at 454. Accordingly, Plaintiff has not raised a genuine fact issue that Murray and Shoalmire's actions were not objectively reasonable in light of *Taylor*.  These Defendants are entitled to qualified immunity on all Plaintiff's claims.

---

[76]    For this reason, even if the *Doe v. Taylor Indep. Sch. Dist.* standard applied to the District itself, which it does not, *see* note 53 *supra*, Plaintiff has failed to raise a genuine fact issue against the District.

### D.    Plaintiff's Motions for Summary Judgment

Also pending before the Court are Plaintiff's motions for summary judgment [Docs. ## 59, 61].  For the reasons explained above, Plaintiff has not established through admissible evidence that she is entitled to judgment as a matter of law. Accordingly, Plaintiff's motions are **denied**.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, the Court holds that Defendant NISD is not liable under Section 1983 or Title IX.  Further, the Court concludes that Defendants Murray and Shoalmire are entitled to qualified immunity in defense of Plaintiff's claims against them individually, and therefore these Defendants are not liable to Plaintiff. Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 58] is **GRANTED**.  It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment on [Section] 1983 Claims [Doc. # 59] is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Title IX Claims [Doc. # 61] is **DENIED**.  It is further

**ORDERED** that Defendants' Motion to Exclude Expert Testimony [Doc. # 64] is **GRANTED in part** in that Dr. Carruthers's testimony is deemed inadmissible and denied in part as moot regarding the remaining experts.  It is further

**ORDERED** that Plaintiff's Motion for Leave to File Motion to Exclude Defendants' Expert Margo Frasier [Doc. # 70] is **DENIED as moot.**  It is further

**ORDERED** that Plaintiff's Motion to Exclude Defendants' Expert Margo Frasier [Doc. # 71] is **DENIED as moot.**  It is further

**ORDERED** that Defendants' Objections to Plaintiff's Exhibits in Support of Summary Judgment on 1983 Claims [Doc. #74] and on Title IX claims [Doc. # 76] are **DENIED as moot**.  It is further

**ORDERED** that Defendants' Objections to Evidence in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. # 89] are **GRANTED in part** in accordance with the evidentiary rulings in the Memorandum and Order.  It is further

**ORDERED** that Plaintiff's Objections to Evidence in Support of Defendants' Motion for Summary Judgment [Doc. # 92] are **DENIED** in accordance with the rulings in the Memorandum and Order.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this 31st day of **January, 2011**.

Nancy F. Atlas
United States District Judge